IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                            Case No. 2:19-cr-21

Often B.W. McDonald

<u>OPINION AND ORDER</u>

    Defendant pleaded guilty to conspiracy to distribute and to possess with the intent to distribute controlled substances in violation of 21 U.S.C. §846 (Count 1) and brandishing, carrying and using a firearm during and in relation to a drug trafficking crime (Count 2). By judgment entered on October 25, 2019, he was sentenced to a term of incarceration of 1 day on Count 1, and a consecutive term of imprisonment of 84 months on Count 2, to be followed by concurrent terms of supervised release of 3 and 5 years. The Bureau of Prisons ("BOP") reports that his projected release date from the institution is February 26, 2025.

    On June 26, 2020, defendant filed a <u>pro se</u> motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018, due to COVID-19. Doc. 51. The government filed a response in opposition to the motion on July 24, 2020. Doc. 55. The government did not contest that defendant exhausted his administrative remedies as required under §3582(c)(1)(A). However, the government argued that defendant failed to show grounds for an early release, and that the statutory factors in 18 U.S.C. §3553(a) weighed against granting the motion. On August 7, 2020, defendant filed a reply, again arguing that his release was warranted due to the threat of COVID-19. Doc. 59. On June 11, 2021, counsel for defendant filed a supplemental memorandum in support of the motion. Doc. 71. The government

filed a response in opposition on July 13, 2021.  Doc. 72.  The record includes BOP medical records.  Docs. 58, 71-1.

I. Standards for Compassionate Release

Under 18 U.S.C. §3582(c)(1)(A)(i), the court can reduce a sentence under §3582(c)(1)(A) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. §3582(c)(1)(A)(i).  District courts have full discretion to define what constitutes an "extraordinary and compelling" reason.  See United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. Nov. 20, 2020).  The court must also consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable. §3582(c)(1)(A).  If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment[.]"  §3582(c)(1)(A).  The grant of compassionate release is at the discretion of the court.  United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

Although §3582(c)(1)(A) also requires that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" found in the United States Sentencing Guidelines, §1B1.13 and Application Note 1, the Sixth Circuit has held that the policy statements do not apply to cases in which an inmate files a motion for compassionate release, and that district courts have full discretion to define what constitutes an "extraordinary and compelling" reason without consulting the policy statement.  See Jones, 980 F.3d at 1111.  Therefore, the court will not base its decision on whether defendant's reasons for release satisfy the policy statements.

2

II. Reasons for Compassionate Release

Defendant, who is 23 years old, alleged in his pro se motion that he has hypertension, which places him at risk for serious illness from COVID-19. However, defendant has provided no medical records which substantiate his claim that he has hypertension. The submitted medical records do not show a diagnosis of hypertension, nor has medication for hypertension been prescribed. Defendant's blood pressure reading on November 27, 2019, was 118/73, within the normal range. Doc. 71-1, p. 5. On November 22, 2019, defendant denied having a history of hypertension. Doc. 58, p. 16. The presentence investigation report ("PSR") indicates that the defendant told the probation officer that he was in good health.

Defendant notes that he was formerly a chain smoker. Being a former smoker is a circumstance that can render a person more susceptible to a risk of serious illness due to COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#smoking. (last visited May 24, 2021). A medical history form dated November 27, 2019, indicated that defendant smoked half a pack of cigarettes per day for seven years. Doc. 58, p. 27. However, there is no evidence that defendant has smoked since being confined in 2019. Defendant has also presented no medical evidence of any adverse physical symptoms which he is currently experiencing or has experienced in the past due to his smoking.

As to the risk posed by COVID-19, the record shows that a positive lab test for COVID-19 for defendant was reported on June 26, 2020, and that he tested negative on July 20, 2020. Doc. 71-1. p. 39. The medical records indicate that the positive result was

3

indicated by asymptomatic testing. Doc. 58, p. 7. There are no medical records showing that defendant suffered any symptoms while he had COVID-19. Although Elkton FCI, where defendant is incarcerated, has had a serious problem with COVID-19 in the past, the rate of infection is now much more controlled. At this point, the BOP reports that currently no inmates and one staff member have tested positive for COVID-19, 791 inmates have recovered, 85 staff have recovered, and 204 staff and 1084 inmates have been vaccinated. See https://www.bop.gov/coronavirus (last checked July 14, 2021).

The supplemental memorandum notes that defendant has been diagnosed with bipolar disorder, major depressive disorder, and anxiety disorder. These are not conditions which would result in an enhanced risk of serious illness from COVID-19. However, defendant asserts that the restrictions at the institution which were implemented to confine the spread of COVID-19, such as lockdowns to enforce social distancing and the temporary discontinuation of many educational and counseling programs, have exacerbated his mental conditions and deprived him of the rehabilitative programs he needs. The medical records indicate that defendant takes a prescription medication for his mental health conditions. Doc. 58, p. 9; Doc. 71-1, p. 1. None of the medical records which have been submitted indicate that defendant's mental conditions are not well managed with medication. Further, it can be anticipated that as more inmates are vaccinated, programs at the institution will resume.

The court concludes that the concerns relied on by defendant, considered alone or in combination, do not constitute an extraordinary and compelling reason for defendant's release.

4

III. §3553(a) Factors

The court must also address the applicable §3553(a) factors. The offenses in this case were serious. Defendant participated in a conspiracy to distribute and to possess with the intent to distribute marijuana, Adderall (amphetamine) and Xanax (alprazolam). In January, 2018, police executed a search warrant at a residence where defendant engaged in drug transactions and found six firearms, marijuana and Xanax pills. Currency, a handgun, ammunition, LSD, Xanax and marijuana were found in defendant's room. In March, 2018, police searched a residence where defendant was present and found Xanax, marijuana and two guns. Defendant possessed drugs on that occasion. When defendant was arrested on January 18, 2019, a firearm was found in his bedroom.

Defendant and co-conspirators also participated in an incident in which an individual who was suspected of stealing Xanax from the conspiracy was threatened with death. The PSR reported that defendant and others repeatedly pointed firearms at the victim and threatened to kill him and his family members unless he wrote a confession. This violent incident, which amounted to the prolonged psychological torture of the victim, highlights the need for the sentence imposed to deter similar conduct in the future and to protect the public from additional crimes by the defendant.

As to the history and characteristics of the defendant, at the time of his convictions for the offense in this case, defendant was in Criminal History Category I. His prior record included two convictions for drug abuse in 2016 and one conviction in 2018 for possession of drugs (marijuana and Xanax). Defendant was abused by his father, and his mother was dependent on drugs and alcohol. At

5

3 years of age, defendant entered the foster care system until he was adopted. He lived independently from the age of 16-19, then went to live with his father. He has been employed in restaurants. He has a history of substance abuse, including marijuana and Xanax. He also has a history of mental health problems, and is currently being treated at the institution for bipolar disorder, major depressive disorder, and anxiety disorder.

As part of the judgment in this case, the court recommended to the BOP that the defendant be enroll in the RDAPT program. However, there is no evidence that defendant has had the opportunity to participate in any substance abuse program in light of the restrictions in place due to the COVID-19 pandemic. Although defendant claims that his release would permit him to obtain the counseling he needs, the fact that he has had no substance abuse counseling at the institution raises concerns as to whether his early release would lead to him reverting to the use of controlled substances and committing additional crimes. Defendant plans to reside with his father, Jessie Walters, upon his release. However, in May of 2019, when the PSR was prepared, Mr. Walters was homeless. No release plan from the BOP has been submitted.

Since his arrest on January 18, 2019, defendant has served approximately 30 months, a little over one-third of the imposed sentence. A reduced sentence would not be sufficient to reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from more crimes by the defendant. The court concludes that the §3553(a) factors warrant denying defendant's motion for a reduced sentence. Even assuming, arguendo, that defendant's health concerns in light of COVID-19 are sufficient to constitute an

6

"extraordinary and compelling reason" for a sentence reduction, that reason is outweighed by the statutory factors which militate against defendant's early release.

IV. Conclusion

In accordance with the foregoing, defendant's motion for a reduced sentence (Doc. 51) is denied.

Date:   July 16, 2021                    s/James L. Graham
                                    James L. Graham
                                    United States District Judge